**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHRISTOFOROS G. POLITIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-08-2207 |
| | § | |
| DEPARTMENT OF HOMELAND SECURITY, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

This matter was referred by United States District Judge Lee H. Rosenthal, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #4). In this civil rights action, Plaintiff Christoforos Politis ("Plaintiff," "Politis") seeks damages against Defendants Department of Homeland Security ("DHS"), Michael Chertoff ("Chertoff"), Secretary of Homeland Security, Kelly Dozier ("Dozier") and Edwin Barnes[1] ("Barnes"), deportation officers with the United States Immigration and Customs Enforcement Agency ("ICE"), and Kenneth Landgrebe ("Landgrebe"), an ICE field officer, in their official and individual capacities, for the injuries he claims to have suffered from unlawful conduct during the course of his deportation proceedings. For the reasons that follow, it is RECOMMENDED that this case be DISMISSED, with prejudice.

**Background**

In June 2004, Politis completed a three-year Texas state prison sentence for cocaine possession. (*See* Complaint, Docket Entry #1, at Exhibit ["Ex."] 2). When he was discharged, ICE officers took him into federal custody, pursuant to a 2001 "Notice of Intent to Issue a Final

---

[1] In his Complaint, Plaintiff merely identifies this defendant as a deportation officer named "Barnes." It appears, however, that the intended defendant is Edwin Barnes, whom Politis identified as "my actual Deportation Officer Mr. Edwin Barnes" in a letter attached, as Exhibit 17(c), to his Complaint.

Administrative Removal Order." (*Id*.). Apparently, ICE deportation officer Edwin Barnes was assigned to his case. (*Id*. at 6). In January, 2005, ICE entered a final order, deporting Politis to his home country of Greece. (*Id*. at Ex. 2, 12). The order was premised on his alien status and his conviction for an aggravated felony offense. (*Id*.). While awaiting deportation to his home country, however, the Greek government accepted Plaintiff's application to renounce his citizenship. (*Id*. at Ex. 1). This had the effect of leaving him "stateless," for immigration purposes, and made it extremely difficult for the United States to deport him. (*Id*. at 3). For that reason, and although he was still subject to deportation, Politis was granted supervised release on November 30, 2005. (*Id.*).

In August 2006, Politis was indicted in federal court for a violation of 8 U.S.C. § 1253(a). The indictment included the following allegation:

> [D]efendant, an alien against whom a final order of removal is outstanding . . . did willfully fail and refuse to make timely application in good faith for travel or other documents necessary to said alien's departure, and did connive and conspire and take any other action, designed to prevent and hamper or with the purpose of preventing and hampering the said alien's departure pursuant to such removal order, including by asking to renounce his Greek citizenship and by not making a good faith effort to obtain travel or other documents in a letter to the Consul General of Greece.

(*Id*. at Ex. 3-6). Politis claims that he was arrested for this charge on September 6, 2006, by a team of ICE officers led by Defendant Kelly Dozier. (*Id*. at 4). He claims further that the officers took him at gunpoint, in front of his children, and that they refused to divulge the reason for the arrest. (*Id*.). Plaintiff characterizes the charges against him as "bogus." (*Id*. at 13). A few days after his arrest, Politis was granted a bond; he states, however, that he elected to remain in the federal detention center because Dozier informed him that, if he signed the bond, he would be taken directly into ICE custody. (*Id*. at 4-5 and Ex. 10). In December, 2006, on the motion of the United States, the indictment was dismissed, without prejudice, due to an intervening Supreme Court decision that

cast doubt on whether someone in Politis's circumstances can be characterized as a "person convicted of an aggravated felony," as charged in the indictment. (*Id.* at Ex. 7, 7(a), 8(a)). *See Lopez v. Gonzales*, 549 U.S. 47, 60 (2006). Following the dismissal of the criminal charge, Plaintiff was released into ICE custody. (Complaint at 5).

In his Complaint, Politis claims that, at this point, Dozier took over his case, with Barnes's permission, so that she could retaliate against him for attempting to include her as a defendant in one of his numerous civil actions. (*Id.* at 6-7, 9-10). He claims that he informed Barnes of Dozier's potential "conflict of interest," but that Barnes did nothing. (*Id.* at 6-7). He also alleges that once he was in ICE custody, Dozier unlawfully delayed placing him on supervised release, insisting that he first be fit with a monitor and placed under house arrest for twelve hours a day. (*Id.* at 10). While on supervised release, the Greek government issued travel documents that allowed Politis's repatriation to his country of birth, and he was, ultimately, deported. (*Id.* at 1). Politis currently lives in Volos, Greece. (*Id.*).

On July 14, 2008, Politis filed this action. (Docket Entry #1). In his Complaint, Politis seeks compensatory damages in the amount of $16,100,000.00, and punitive damages in the amount of $2 million, against Defendants in their individual, as well as their official, capacities for violations of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. (Complaint at 1-3). The threshold question is whether Plaintiff's claims should be dismissed under 28 U.S.C. § 1915(e)(2)(B). The court recommends that this lawsuit be dismissed, for the reasons that follow.

**Discussion**

In this case, Plaintiff is proceeding *in forma pauperis*, and so the court may examine the complaint to determine whether it "is frivolous or malicious," "fails to state a claim on which relief

may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). If the complaint fits within one or more of these categories, the court has the discretion to dismiss the case *sua sponte*. *See id.*; *United States v. Pineda-Arrellano*, 492 F.3d 624, 628 (5th Cir. 2007).

Politis brings this lawsuit under the authority of the Supreme Court's opinion in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, which extended the protections afforded under § 1983 of the Civil Rights Act of 1871 to parties who are injured by federal actors. *See* 403 U.S. 388, 395-97 (1971); *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005); *McGuire v. Turnbo*, 137 F.3d 321, 323 (5th Cir. 1998). Under both laws, a plaintiff must show that the allegedly offending conduct deprived him of rights secured by the Constitution or laws of the United States. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979). Here, Politis claims that Defendants violated his rights under the Fifth and Fourteenth Amendments. (Complaint at 1). However, some of these claims are not recognized by law and can be summarily dismissed under § 1915.

First, among the defendants is the Department of Homeland Security. (*Id.*). The DHS, however, as an arm of the United States government, is immune from civil rights actions under the doctrine of sovereign immunity. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Unimex, Inc. v. United States Dep't of Hous. & Urban Dev.*, 594 F.2d 1060, 1061 (5th Cir. 1979). For this reason, Politis cannot maintain this action against the DHS.

Next, the other Defendants—federal actors Dozier, Barnes, Landgrebe, and Chertoff—have been sued in their official capacities. However, "*Bivens* . . . provides a cause of action only against government officers in their individual capacities." *Affiliated Prof'l Home Health Care Agency*, 164

F.3d at 286; *see Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) (stating that claims against federal actors in their official capacities are generally treated as claims against the United States and are barred by sovereign immunity); *Unimex, Inc.*, 594 F.2d at 1061 (same). Under the law, then, Plaintiff cannot maintain his action against Dozier, Barnes, Landgrebe, or Chertoff to the extent that he has sued them in their official capacities. Further, by definition, the Fourteenth Amendment applies only to the actions of state actors, as opposed to federal actors. *See Rutherford v. United States*, 702 F.2d 580, 583 n.4 (5th Cir. 1983); *Davis v. Passman*, 544 F.2d 865, 868 (5th Cir. 1977). As a consequence, Politis cannot state a claim under the Fourteenth Amendment against federal actors Dozier, Barnes, Landgrebe, or Chertoff, regardless of capacity. *See Rutherford*, 702 F.2d at 583 n.4. In this instance, Plaintiff's claims against the DHS, against the other Defendants in their official capacities, and against any party for violations of the Fourteenth Amendment, are subject to dismissal under § 1915(e)(2)(B).

Plaintiff's remaining claims are for violations of his Fifth Amendment rights by Defendants Dozier, Barnes, Landgrebe, and Chertoff in their individual capacities. *See Affiliated Prof'l Home Health Care Agency*, 164 F.3d at 286. But these claims, too, are subject to dismissal under § 1915 if they are "frivolous or malicious," "fail[] to state a claim on which relief may be granted," or "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Pineda-Arrellano*, 492 F.3d at 628.

The focus of Plaintiff's allegations is Defendant Kelly Dozier, an ICE deportation officer. (Complaint at 9-15). In a previous lawsuit, Politis unsuccessfully petitioned to amend a civil rights complaint to include claims against Dozier for allegedly retaliating against him for renouncing his citizenship. *See Politis v. Chertoff*, Civ. A. No. H-05-3229 (S.D. Tex. 2005). In this Complaint, he

claims that Dozier "t[ook] plaintiff's case from the plaintiff's case officer defendant Barnes" so that she could retaliate against him for attempting to sue her. (Complaint at 9). He alleges that this created an unethical "conflict of interest." (*Id.*). He also asserts that Dozier's actions were unlawful because they were taken "malicious[ly] and deliberately," for the purpose of "retaliat[ing against] plaintiff by keeping plaintiff incarcerated [in] any way she possibly can." (*Id.*). He claims further that Dozier's actions, in placing him on supervised release with a monitor and house arrest, were unwarranted, "deliberate[]," "premeditated," and "malicious." (*Id.*). In addition, he complains that Dozier used a camera when she discussed the terms of his release with him, but did not use a camera in meetings with other detainees. (*Id.* at 12). He suspects that such an action was discriminatory, and notes that the Constitution requires that "all persons . . . [be treated] the same and not based on color[,] religion and what country he comes [from]." (*Id.*). Politis represents that he initially refused to be released with the conditions of monitoring and 12-hour house arrest, and that, when he changed his mind, Dozier refused to release him because he had already refused. (*Id.*). Politis alleges that Dozier's intention was to keep him in ICE custody "forever and get her revenge because plaintiff tried to include [her] in his previous civil action." (*Id.* at 11). Politis also states, however, that this alleged deprivation of his due process and equal protection rights merely resulted in an additional two-week to three-month period of detention. (*Id.* at 13).

Plaintiff's complaints against Barnes are as follows:

> His misconduct begins when plaintiff informs defendant Barnes about the conflict of interest with the plaintiff, defendant Dozier had and he did not do anything to stop instead he took her side and allow her to retaliate plaintiff in any possible way she will find. . . .  it is clear and convincing that defendant Barnes deliberately maliciously disregard plaintiff by taking sides and helping Dozier to retaliate plaintiff and violating plaintiff's due process of law, and equal protection of law 5th and 14th amendment per United States Constitution for his illegal incarceration without legal authority from January 03, 2007 until January 16, 2007, and as he

>complied with his peers (defendant Dozier) for her retaliatory action that she took against the plaintiff which also is unethical and should be penalize (criminal charges) as exemplary for the rest of the officials of that government's agency (DHS/ICE).

(*Id.* at 17 [sic]).

Federal actors who are sued in their individual capacities are entitled to qualified immunity. *See Melear v. Spears*, 862 F.2d 1177, 1182 & n.5 (5th Cir. 1989) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987); *Butz v. Economou*, 438 U.S. 478 (1978)). Under the doctrine of qualified immunity, government officials are shielded "'from civil liability for damages based upon the performance of discretionary functions if the official[s'] acts were objectively reasonable in light of then clearly established law.'" *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001)); *see Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In essence, the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* The Fifth Circuit has set out a two-part test to determine whether defendants are entitled to protection from suit under the doctrine of qualified immunity. *See Atteberry*, 430 F.3d at 253; *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998). Under this test, the court must first determine "whether the plaintiff has alleged a violation of a clearly established constitutional right." *Id*; *accord Atteberry*, 430 F.3d at 253. If no such violation has been alleged, then the inquiry ends. *See Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). If, however, the plaintiff has alleged a violation of a clearly established right, the court turns to the second prong, to decide "whether the defendant[s'] conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Hare*, 135 F.3d at 325; *accord Atteberry*, 430 F.3d at 253.

To avoid the qualified immunity bar, Politis first must allege that Defendants violated his "clearly established constitutional right[s]" under the Fifth Amendment. *See id.* The Fifth Amendment to the United States Constitution provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. 5. Although the Fifth Amendment does not expressly contain an "equal protection clause," as does the Fourteenth Amendment, it is considered to provide the same protections. *See McConnell v. Federal Elec. Comm'n*, 540 U.S. 93, 187 (2003). In this case, Politis does not state any facts that indicate that his rights under the Fifth Amendment were violated by Defendants' actions. He cites no actual due process violation, and states no grounds on which he can build a claim of discrimination. Further, even assuming, for these purposes only, that Politis has alleged a violation of a clearly established constitutional right, he has alleged no facts that show that Defendants' conduct was "objectively unreasonable." *See Atteberry*, 430 F.3d at 253. The Fifth Circuit has recognized explicitly that the "inquiry is an objective one, not dependant on the particular officer's subjective beliefs." *Haggerty v. Texas So. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)). Indeed, the Fifth Circuit has noted the following:

> because the test for immunity is solely one of objective reasonableness, any "subjective intent, motive, or even outright animus [is] irrelevant in a determination of qualified immunity" . . . Thus, any subjective, even angry, motives on [an officer's] part are immaterial to our determination that he [is] entitled to qualified immunity.

*Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 755 (5th Cir. 2001). In this case, then, even if the officers' actions were motivated by personal animosity or a desire for retaliation, such factors are subjective, and do not go to whether the actions were "objectively" reasonable. *See Haggerty*, 391 F.3d at 655; *Morris*, 277 F.3d at 755. Plaintiff has not shown that the challenged actions were

unreasonable in an objective inquiry. *See id.* For these reasons, he has failed to meet his burden to show that Defendants Dozier and Barnes are not entitled to qualified immunity. *See id.* Qualified immunity, then, acts as a bar to Plaintiff's remaining claims against Dozier and Barnes, and, so, these claims can be dismissed under § 1915.

Further, Politis claims that Defendants Kenneth Landgrebe and Michael Chertoff are responsible for the actions by Dozier and Barnes by virtue of their supervisory positions, and because they did nothing to stop the alleged violations of his rights once they were informed of them. (*Id.* at 17-19). He also claims that Landgrebe is responsible because he inadequately trained Dozier and Barnes. (*Id.* at 18). The Fifth Circuit has made clear, however, that *Bivens* does not allow a claim under the doctrine of *respondeat superior*. *See Abate v. v. Southern Pac. Transp. Co.*, 993 F.2d 107, 100 (5th Cir. 1993). As a consequence, neither Landgrebe nor Chertoff may be found liable for the conduct of Dozier and Barnes unless he was personally involved or was responsible for a policy so deficient that it caused a constitutional injury. *See id.* Politis does not allege that Landgrebe or Chertoff were personally involved in these allegedly offending actions. Consequently, he cannot succeed on such a claim.

A failure to adequately train one's staff, however, can be evidence of the implementation of a deficient policy. *See City of Canton v. Harris*, 489 U.S. 378, 380 (1989). But to recover on this theory, a plaintiff must show that the defendant was not merely negligent, he must show that he acted with "deliberate indifference" to his rights. *See Board of County Commr's of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997). Any "deliberate indifference" must be obvious, and liability attaches only if there is direct causation between the policy and the injury. *See Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Politis has not alleged that either

9

Landgrebe nor Chertoff was personally involved in the events giving rise to his claims, or that either acted with deliberate indifference. It is appropriate, then, to dismiss these claims, as well, under 28 U.S.C. § 1915(e)(2)(B).

As a final matter, the court has reviewed the docket history for the United States District Court for the Southern District of Texas and discovered that Politis has filed at least 12 lawsuits relating to his criminal and deportation proceedings, most of which have been dismissed as frivolous or without merit. In one such case, Politis was warned "that he will face sanctions, including monetary penalties and restrictions on filing future lawsuits, if he continues to file meritless complaints or petitions in federal courts." *Politis v. Kowis*, Civ. Action No. H-07-0594, at 3 (S.D. Tex. Mar. 9, 2007) (Miller, J.). The fact that Politis is proceeding *pro se* does not grant him the "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Politis should be warned again that he may be subject to sanctions if he continues to file meritless actions in this court.

**Conclusion**

Accordingly, it is **RECOMMENDED** that this action be **DISMISSED**, with prejudice, under 28 U.S.C. § 1915(e)(2)(B).

It is further **RECOMMENDED** that Politis be **WARNED** that he may face sanctions if he continues to file frivolous lawsuits in federal court.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten business days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 02-13, S.D. Texas. Failure to file written objections within the

time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 17th day of February, 2009.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**